UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUSTO RAMON DE LA ROSA,
JOSE TRINIDAD RAMOS, and
ERICK AGUILAR, on behalf of themselves
and other similarly situated employees,

                              Plaintiffs,

    -against-

EL NUEVO SANDY RESTAURANT CORP.,
*doing business as* SANDY RESTAURANT,
and RUBEN PICHARDO, individually,

                              Defendants.

Case No.: 19 CV 9497
(PAE)(OTW)

---

## JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT

The plaintiffs are former employees of El Nuevo Sandy Restaurant Corp. and its owner Ruben Pichardo (collectively "Defendants"), a Dominican restaurant in upper Manhattan.[1] Plaintiffs and Defendants, collectively referred to as the "Parties" herein, respectfully make this request that the Court approve their settlement of the above-captioned matter. As the Plaintiffs' action and claims arise under the Fair Labor Standards Act, 29 USC § 216(b) ("FLSA"), the Parties' settlement must be approved by this Court.

> The Fair Labor Standards Act expressly prohibits settlement of any right to unpaid minimum wages or unpaid overtime claims by employees, made pursuant to 29 USC §§ 206-07, without the supervision of the Secretary of Labor. 29 USC §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to FLSA's restriction on settlement to include judicially-supervised stipulated settlements. *See Cheeks v. Freeport Pancake House, 2015 WL 4664283 (2d Cir. August 7,*

---

[1] The claim was brought by three (3) individuals and two (2) additional opt-in plaintiffs. This action is not a class action and the plaintiffs never sought collective action certification, so there are no unrepresented/putative plaintiffs. One of the plaintiffs, Jose Trinidad Ramos requested that his case be dismissed with prejudice and is not participating in the settlement. Defendants are El Nuevo Sandy Restaurant Corp., and its principal, Ruben Pichardo, collectively referred to as "Defendants".

2015); *See also, Manning v. New York Univ.*, 2001 WL 963982, \*12-13 (SDNY 2001)(*citing D.A. Schulte, Inc., v. Gangi*, 328 US 108, 113 n.8 (1946) and *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982).

The Parties have executed a written settlement agreement (the "Settlement Agreement"), a copy of which is annexed as Exhibit "1", and jointly ask the Court to approve the settlement and, upon completion of the monthly payments, allow the parties to file a dismissal of the case with prejudice as set forth in Exhibit "3".

## I. PROCEDURAL HISTORY

The case has a relatively long procedural history. Plaintiffs filed the Complaint on October 16, 2019, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and violations of Articles 6 and 19 of the New York State Labor Law ("NYLL") and their supporting New York State Department of Labor regulations. [Dckt No. 1]. On October 16, 2019 the District Court referred the case to the Magistrate Judge for general pretrial and settlement. [Docket 5]. On November 4, 2019 defense counsel appeared. [Docker 6]

On November 5, 2019, individuals Nelson Rodriguez and Pedro Sosa filed opt-in consents to be party plaintiffs in the case [Docket 8, 9]

Between November 2019 and May 2020, the parties exchanged records and calculations. In March 2020 the business was forced to close due to the global pandemic, placing unprecedented financial stress on the employer.

On January 20, 2020, Defendants filed their answer, generally denying the allegations of the Complaint. [Dckt. No. 18].

On May 6, 2020 the Magistrate Judge referred the action to Court-annexed mediation, pursuant to S.D.N.Y. pilot mediation program for FLSA Cases. [Dckt. No. 24].

Multiple mediation sessions were held before Mediator Daniel Engelstein, Esq., well

known to counsel as an experienced mediator. Formal discovery was conducted in parallel, while the parties worked within the SDNY mediation program during approximately six (6) months, and mediation was unsuccessful and closed. Thereafter the parties continued to work with the Magistrate Judge and with each other, completing discovery and ultimately, as the city began to open and the business saw the possibility of surviving economically and resolving the claim, the parties successfully resolved the case[2].

## II. FACTUAL BACKGROUND

The Plaintiffs worked at "Sandy Restaurant" in East Harlem. Prior to the pandemic it was doing well. Like all restaurants, it has been doing better since March when it re-opened along with the city in general. The employees began punching a time clock in mid-2017. This is consistent with plaintiffs' recollection and the voluminous payroll records exchanged by the employer.

**Plaintiffs' Claims**

**1. Justo Ramon de la Rosa**

Justo was a long-term employee who mostly worked at the counter in the restaurant. His claim was constrained by the six (6) years statute of limitations afforded by the New York Labor Law. *See*, NY Lab. Law § 198(3), 663(3). Mr. de la Rosa worked approximately forty-eight (48) hours per week. The payroll records were inconsistent with Mr. de la Rosa' claim, raising issues of fact. Depending on whether the payroll records were accepted as true, Plaintiff's claim could be either below $10,000 or up to $50,000 in unpaid overtime compensation.

**2. Erick Aguilar**

---

[2] Negotiations encountered some speed bumps this summer but resumed with the encouragement of the Magistrate Judge and counsel, and all parties returned to the table.

Erick Aguilar had the same job as Justo de la Rosa, as well as making deliveries during half of his shift. The restaurant had two (2) delivery guys per shift and each of them did about fifteen (15) deliveries per day. He normally worked ten (10) hours, six (6) days per week. He was paid cash. Mr. Aguilar was working since 2003 (so we use 6 years prior to the filing of the complaint). Like Justo de la Rosa, Erick Aguilar claims he was paid a flat salary. The restaurant claims he was paid hourly and they properly took a tip credit because he performed deliveries. As such, there were factual and legal disputes which were ultimately not resolved in resolving the claim. Plaintiff's damages calculations exceeded $50,000 for Mr. Aguilar, whereas defendants calculated a much lesser figure.

3. **Pedro Sosa**

Pedro Sosa began his employment in mid 2017 as a dishwasher and delivery person. He dis a significant amount of tasks inside the restaurant (i.e., dishwashing), so he alleged that a tip credit taken by the restaurant was improper. Due to his long hours and low pay Mr. Sosa's claim was significant, similar to Mr. Aguilar's and Mr. de la Rosa's.

4. **Nelson Rodriguez**

Nelson Rodriguez was employed during two (2) years doing dishwashing and deliveries, just like Pedro Sosa. They paid using a purported tip-credit but he allegedthat the amount of the credit taken was not proper, it was not explained adequately, and he was inside the restaurant during half his shift doing dishwashing, so he should have been paid the full minimum wage. Plaintiff's counsel calculated that Mr. Rodriguez is owed $33,500.

All plaintiffs may also recover liquidated damages, under Federal and State law, at 100% of the wage deficiency.

To be realistic in this uninsured claim, Plaintiff's understood settlement had to be for less than what plaintiffs would be awarded if we were to obtain a default judgment or could win if they proceeded to trial. Their goal was to obtain monetary relief, not a judgment, and the practical / real world resolution for this case, and they hoped to resolve for the best possible number between $100,000 and $150,000 for all four (4) employees.

As indicated, the plaintiffs did not seek collective action certification of the case. No non-parties current or former employees will be affected by the settlement of this case. Plaintiffs and their counsel had legitimate concerns about the collectability of a significant judgment against the defendants. *See, Lliguichuzhca v. Cinema 60, LLC*, 11 Civ. 4486, p.4 (GWG), *citing Cabrera v. Roselea Int's Services*, 2011 WL 7096634 at *4 (M.D. Fla. Dec. 30, 2011). Our investigation revealed that the corporate defendant had little collectable assets, and the individual defendant posed a risk of being unable to satisfy a significant judgment. The company's tax returns confirmed sales of less than $500,000 per year, placing the plaintiffs at risk of having their federal claims dismissed before trial.

The document production in this action included hundreds of pages of payroll records for the plaintiffs as well as financials, which both sides suggested supported their respective claims and defenses.

Plaintiffs' counsel estimated their best-case scenario recovery approach $100,000 per plaintiff, including unpaid wages and spread of hours premiums, and liquidated damages.

### III.  THE SETTLEMENT

In their best-case scenario plaintiffs' total damages may have exceeded $400,000.00 This included unpaid wages and overtime compensation, spread-of-hours premiums, liquidated damages at 100% of their damages, statutory penalties, prejudgment interest, and attorneys' fees.

Of course, defendants had defenses which were supported by documents and witnesses, and the eventual outcome of the case entailed significant risk to all parties. And this is an immigrant-owned, single location restaurant struggling to survive in an industry decimated by the global pandemic. The case proceeded on parallel tracks: discovery in the District Court supervised by the Magistrate Judge; and settlement, facilitated by the SDNY mediation program, and the Magistrate Judge. Throughout all proceedings, all parties participated in good faith and with experienced counsel.

The parties represent to the court that the settlement is a fair and reasonable resolution of bona fide disputes, reached as a result of contested litigation from pleadings and substantial discovery including the exchange of several hundred pages of documents by the parties, court-facilitated mediation, and ultimately resolution of a difficult case. The amount of the settlement is ninety-five thousand dollars ($99,000.00), payable in twenty-one (21) installments. Sixty-six thousand dollars ($66,000) will be distributed to the plaintiffs, in amounts proportionate to their claim. Thirty-three thousand ($33,000), *one-third* of the settlement, will be distributed to Cilenti and Cooper, who represented the plaintiffs. Counsel's costs will be waived.

Exhibit "2" to this application are plaintiffs' counsel's billing records and retainer. Notably, the settlement provides protection to the plaintiffs in case of non-payment. The settlement structure ensures that payments will made before the dismissal is filed; this will save ongoing litigation expenses and avoid risk of non-payment for this uninsured claim.

All parties recognized that there were valid factual disputes concerning the hours worked by the plaintiffs and the sufficiency of the wages they were paid. In this case, hundreds of pages of records were exchanged, and the company had better documentation than in many similar

cases. On the other hand, some documents demonstrated at least part of the claims to be indicated.

Counsel on both sides have experience in this area of practice and worked with their respective clients to reach a fair and efficient resolution. Indeed, the parties respectfully submit that the settlement clearly "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155 at *1 (E.D.N.Y. 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Here, the settlement was reached as a result of repeated arm's length negotiations over the course of over eighteen (18) months, between counsel who are well versed in the prosecution and defense of wage and hour collective actions, and after countless meetings and phone calls between counsel and with court-ordered mediation. Courts typically regard the adversarial nature of a litigated FLSA case resolved via mediation to be a good indicator of the fairness of the settlement. *See, Aponte v. Comprehensive Health Management, Inc.*, 2013 WL 1364147 at *4 (S.D.N.Y. 2013). Just as Magistrate Judge Gabriel W. Gorenstein found in *Lliguichuzhca*, "[g]iven that plaintiffs would have faced substantial barriers to collecting any judgment and that the proposed settlement is the result of arm's length bargaining between represented counsel during contested litigation…", the court should find it fair and reasonable under the circumstances of this case.

## IV.    ATTORNEYS' FEES

Both the FLSA and the Labor Law provide for awards of attorneys' fees and costs to plaintiffs who prevail on their claims under those statutes. *See* 29 U.S.C. § 216(b) ("The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis

added); N.Y. Lab. Law 198(1-a), 663(1). The FLSA and state wage and hour laws provide for fee-shifting to ensure that workers are not disadvantaged when they use the courts to recover unpaid wages guaranteed by statute. The fee-shifting provisions are intended to help overcome these hurdles and encourage competent counsel to take on representations and skillfully represent their clients. In this case plaintiffs' counsel requests one-third pursuant to its retainer with the plaintiffs. Recognizing the "significant risks" undertaken by attorneys who work on contingency, the New York State Court of Appeals has upheld such agreements of one-third or higher. *In Re: Lawrence*, 2014 WL 5430622 (NY October 28, 2014). In this case, the fee requested is less than one-third, which is also less than what the firm would have billed hourly in its representation of these individual plaintiffs. The firm's retainer and billing records are annexed hereto as Exhibit "2".

## V. CONCLUSION

Wherefore, the Parties jointly and respectfully request that this Court approve the Settlement Agreement of the Parties in the amount of $99,000, and require counsel to dismiss the instant action between the parties with prejudice, at the completion of payment. Defendants operate a single-location neighborhood restaurant with limited financial resources and like the industry generally, has been disproportionately impacted by the COVID-19 crisis. The Agreement significantly decreases the risk of collection by permitting a reasonable settlement without the parties having to incur the expense and significant risk of trial. The parties seek fees in the amount of thirty-three thousand dollars ($33,000), to be paid from the settlement. The fee is less than plaintiffs' counsel would have billed on an hourly basis, waives costs for filing, service and investigation, and is less than the plaintiffs agreed to in the retainer.

WHEREFORE, the Parties jointly and respectfully request that this Court approve the Settlement Agreement of the Parties, and order the parties to file the dismissal of the action with prejudice as set forth in Exhibit "3", upon completion of the settlement payments.

Dated: August 20, 2021
      New York City

Respectfully submitted,

| CILENTI & COOPER, PLLC | ALI LAW GROUP, P.C. |
|---|---|
| /s/ Peter H. Cooper, Esq. | /s/ Andrea Moss, Esq. |
| By:_____ | By:_____ |
| Peter Hans Cooper, Esq. | Andrea Moss, Esq. |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |
| 10 Grand Central | 11 Prospect Street – Suite 1a |
| 155 East 44th Street – 6th Floor |    Huntington, New York 11743 |
| New York, New York 10017 | Telephone (631) 423-3440 |
| Telephone (212) 209-3933 | |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |